THOMAS, Judge,
dissenting.
I must respectfully dissent. M.G. (“the mother”) had improved her circumstances after losing custody of her children for the second time and after being informed that the Etowah County Department of Human Resources (“DHR”) was planning to terminate her parental rights. DHR had a long history with the mother, having instituted safety plans on at least three occasions before the children were first removed from the mother’s care and placed in DHR’s legal custody in March 2005. DHR based its decision to seek termination of the mother’s parental rights on her repeated inability to meet the needs of her children without supervision and DHR intervention.
DHR also based its decision to seek termination on the psychological evaluation of the mother performed in June 2006 by Willis Estis, a licensed professional counselor. His report was introduced into evidence. Estis interviewed the mother and administered the Minnesota Multiphasic Personality Inventory-2 (MMPI-2) test and the Shipley Institute of Living Scale test. Those tests indicated that the mother was in the low average range of intellectual functioning and that the mother “tends to be resentful, rebellious, and nonconforming.” Estis noted that the mother would be inclined to respond impulsively and that she would not benefit from experience. In other words, Estis explained, the mother would not learn from her mistakes but would instead repeat them. Es-tis thought that, if well supervised, the mother could effectively parent the children. According to Estis, the mother would respond to external controls placed upon her, but he opined that, without those controls, the mother would be likely to *445 return to her old patterns and habits. Es-tis suggested that the mother be subjected to random drug tests for an extended period and that she be provided with counseling to educate her about the addictive process. However, Estis concluded that the prognosis for long-term recovery in the mother was poor.
The mother had made recent progress toward meeting the goals set out in her individualized service plan (“ISP”). She had been drug-free for over one year, and she had maintained employment, although her employment provided income that did not appear to be sufficient for the mother to meet all of her expenses were she to have four additional children to feed and clothe. However, test results and Estis’s testimony indicated that the mother’s personality was one that responded to external controls on her behavior, and Estis opined that the mother’s impulsive behavior and harmful patterns would likely return once the mother was no longer controlled by things like DHR supervision or random drug tests. Notably, the mother had been subject to those controls for the entire 16-month period of sobriety. Although Estis admitted that the mother’s reported progress was encouraging, he had not seen her since 2006 and could not offer an opinion on whether she would be a suitable parent at the time of the termination trial. However, Estis’s earlier prognosis was borne out by the mother’s behavior after the children were first returned to her in 2006. The mother began to use drugs again and became increasingly resistant to DHR intervention. Thus, the progress the mother had made is tempered by the earlier attempt to reunite the family and the apparent correctness of Es-tis’s predictions regarding the mother’s behavior patterns.
Because I believe that DHR did prove that the mother, although currently meeting ISP goals, had repeatedly failed to maintain progress toward being able to meet the responsibilities of parenting, I would affirm the judgment terminating the mother’s parental rights.